IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIE BRACKENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-0642-D |
| | § | |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT, et al., | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's *Order of Reference*, filed June 17, 2010, before the Court are *Defendant Dallas Independent School District's Motion for Summary Judgment*, filed June 3, 2010 (doc. 34), *Defendant Dallas Independent School District's Objections and Motion to Strike Plaintiff's Affidavit and Brief in Support* (doc. 62), *Defendant Dallas Independent School District's Objections and Motion to Strike Plaintiff's Summary Judgment Evidence* (doc. 63), *Defendant Dallas Independent School District's Motion to Strike Plaintiff's Sur-Reply in Opposition to Motion for Summary Judgment and Brief in Support* (doc. 72), and *Plaintiff's Motion for Leave to Respond to Defendant's Motion to Strike Plaintiff's Sur-Repy in Opposition to Motion for Summary Judgment and Brief in Support* (doc. 73). Based on the relevant filings, evidence, and applicable law, the motions to strike Plaintiff's affidavits and sur-reply are **GRANTED**; the motion to strike Plaintiff's evidence is **GRANTED**, in part, and **DENIED**, in part; and the motion for leave to file a response is **GRANTED**. The Court recommends that the motion for summary judgment be **GRANTED**.

## I. BACKGROUND

Willie Brackens ("Plaintiff") sues Dallas Independent School District ("DISD") for wrongful termination, retaliation and conspiracy, intentional infliction of mental distress, harassment,

isolation, disparate treatment, denial of equal pay, race discrimination under Tile VII and 42 U.S.C. §§ 1981 and 1983, defamation/slander and abuse of process, violation of the Family and Medical Leave Act of 1993 ("FMLA"), violation of the Americans with Disabilities Act ("ADA"), violation of the Health Insurance Portability and Accountability Act ("HIPAA"), illegal motivation for employment discharge under 28 U.S.C. § 1983, and violation of the Texas Tort Claims Act ("TTCA"). (*See* Compl. at 7-16.)

Plaintiff was employed by DISD in January 2002, and assigned to its Benefits Department, under the supervision of Marita Hawkins. (D. App.[1] at 126.) On June 9, 2005, as a result of a reduction in force, DISD reassigned Plaintiff to an administrative assistant position in its Reading First Program ("Reading First").[2] (*Id.* at 126, 263-364, 287.) On August 10, 2005, Plaintiff's new supervisor, Jo Anne Hughes, sent her a memorandum notifying her that she would receive training from an experienced office manager because she "did not come in to the position with the basic functions required for the job including the ability to process payroll, input requisitions and purchase orders, as well as a working knowledge of the functions of Oracle." (*Id.* at 3, 9.) The memorandum stated that the additional training was to ensure every opportunity for success for Plaintiff. (*Id.* at 9.) Plaintiff became upset with this language, causing Hughes to prepare a revised memorandum. (*Id.* at 3.) Before she could deliver the revised memorandum, Plaintiff notified her through e-mail that she had dangerously high stroke-level blood pressure, as confirmed by DISD's nurse. (*Id.* at 3, 288.) Hughes advised Plaintiff to go home for the day and that she would ensure that Plaintiff was not docked any pay for the day. (*Id.* at 3.)

---

[1] Appendix attached to Defendant's motion for summary judgment. ("D. App."). (See doc. 36, 37.)

[2] Plaintiff's deposition testimony states that the reassignment was a lateral move with no change in salary and is not a basis for her claims. (D. App. at 264-65.)

Plaintiff took the next two days off, returned to work on August 15, 2005, and complained to several DISD personnel by e-mail that Hughes had severely criticized her and threatened her life by "undue pressure, harassment, and unfair treatment." (*Id.* at 3, 268-69, 289-91.) Plaintiff called her absences "manager provoked illness" and wanted compensation. (*Id.* at 289.) She claimed that Hughes had told her on August 9th, 2005, that she would not have hired her, that the previous officer manager had done a lot more things, and that despite having two-full-time employees of her own, she had to call in outside employees for help. (*Id.*) She also complained that when she moved office furniture around to accommodate a fellow employee's complaints of cold, Hughes expressed disapproval and said that she had told her to wait for her return before changing anything. (*Id.*)

On August 22, 2005, in an informal problem-solving session with Robert Hernandez, Plaintiff confirmed that she understood that overtime work must be pre-approved by Hughes under DISD policy, and she agreed to leave the building at 4:25 pm to ensure she timely clocked out. (*Id.* at 3-4, 12, 271-72, 292.) She failed to timely clock out, however. (*Id.* at 4, 13.) She also appeared to be having problems with payroll and with processing routine purchase requisitions. (*Id.* at 4-5, 8, 18.) On one occasion, Plaintiff amended a payroll memorandum already approved by the coordinator, Ron Morris, and submitted it without his further approval. (*Id.* at 4, 14-16, 273-74, 293-94.) Hughes spent her own time reviewing and fixing payroll errors. (*Id.* at 4.)

On September 14, 2005, Hughes presented Plaintiff with a memorandum addressing concerns that Plaintiff had not opened e-mails from her and therefore missed a deadline, and that she had failed to follow a directive to email her and Morris a list of employee absences each day. (*Id.* at 5,19.) Plaintiff began writing a rebuttal on the memorandum itself. (*Id.*) There is some dispute as to the ensuing interaction between Plaintiff and Hughes, but Hughes ultimately called a

security officer to escort Plaintiff out. (*Id.*)

After the incident, Renita Berry, the Assistant Superintendent for Curriculum and Instruction, reassigned Plaintiff to an administrative assistant position in the Physical Education Department ("P.E.") with the same compensation. (*Id.* at 5, 20-21.) Plaintiff's supervisor, Lorna Storey, occupied the only other position in P.E. as Director. (*Id.* at 21.) Storey regularly visited schools throughout the DISD and was frequently away from the office. (*Id.*) Shortly after her assignment, Plaintiff began complaining of Storey's management style to DISD personnel. (*Id.* at 21, 295-96, 303, 317.) Plaintiff complained that Storey was never in her office, did not prepare a schedule or notify Plaintiff of her whereabouts, assigned her last-minute and tail-end projects, demanded strict compliance with time allotted for lunch etc., gave hurried instructions, stomped around the office, and blamed Plaintiff for her own inability to work. (*Id.* at 21, 276, 295-96.) She also complained that Storey instructed her to directly call her, and not a school coach, with questions. (*Id.* at 317.) Berry met with her and Storey on April 12, 2006, to address these concerns. (*Id.* at 304-08, 318-20.)

In May 2007, Plaintiff applied for and received a position as office manager at W.B. Travis Vanguard Academy ("Travis ") accompanied by a pay raise. (*Id.* at 24-24, 309-10, 321.) She began working at Travis on May 14, 2007, under the supervision of Principal Mari Smith. (*Id.*) Shortly thereafter, Smith assigned another employee to train Plaintiff in skills such as payroll and requisitions, but the employee told Smith that Plaintiff's argumentative and confrontational nature made it frustrating to train her. (*Id.* at 25, 56, 58.) During a staff meeting on August 14, 2007, Smith instructed the staff to turn their cell phones off and not receive personal calls while at work. (*Id.* at 25, 56, 59.) Plaintiff responded that use of her cell phone "was not up for discussion." (*Id.*)

On September 13, 2007, a parent complained that Plaintiff had been rude and unwilling to help. (*Id.* at 26.) Plaintiff left school early that day leaving a note on Smith's phone that she was not feeling well. (Tr. at 25-26, 36, 38.) The next day, another parent complained that Plaintiff had been rude, and Smith gave Plaintiff a list of her daily duties and reprimanded her for leaving campus without providing notification on the radio or in person. (*Id.* at 26, 37, 38, 39.) On September 25, 2007, Plaintiff requested leave under the FMLA. (*Id.* at 149.) On September 28, 2007, Smith held a conference with Plaintiff, during which she reviewed her duties and previous reprimands and presented her with two new letters of reprimand. One was for abuse of work hours and arriving ten minutes to forty-five minutes late on fourteen out of twenty-eight days since the week of August 20, 2007, and the other was for failing to timely clock out on September 27, 2007. (*Id.* at 27, 40-44.) During the conference, Assistant Principal Sonya Palmer told Plaintiff that she was behaving in an unprofessional and insubordinate manner. (*Id.* at 27.)

On October 3, 2007, Smith reprimanded Plaintiff for arriving late, failing to timely clock out, disregarding deadlines, being rude to parents, using her cell phone excessively at work, and being insubordinate to Smith in private and in the presence of others. She notified her that she was recommending further disciplinary action for failure to correct these issues. (*Id.* at 27, 45-47.) On October 12, 2007, Smith reprimanded Plaintiff again for making false statements to staff about Smith, making unapproved purchases, fostering poor relations between Smith and her staff, being rude to substitute teachers, and failing to assist them. (*Id.* at 27-28, 48-50.) On October 15, 2007, Smith reprimanded Plaintiff for failure to follow directives to provide a weekly attendance report and code "Fair Day" for non-exempt employees, and she recommended termination based on the conduct discussed in her reprimands. (*Id.* at 28, 51, 53.) On October 16, 2007, the assistant

principal reprimanded Plaintiff for failure to follow telephone etiquette and for questioning Palmer negatively and unnecessarily about the whereabouts of Smith and Carol Blair, the counselor. (*Id.* at 52.)

On October 25, 2007, Smith notified Plaintiff that she had recommended her termination due to unprofessional conduct, tardiness, failure to follow directives, and insubordination, and that she was being placed on administrative leave with pay pending her request for a hearing. (*Id.* at 28, 54.) On October 26, 2007, Plaintiff was informed that her pending FMLA leave request would be closed because required documentation had not been received. (*Id.* at 149.) On December 12, 2007, Plaintiff invoked the grievance procedure with respect to her termination, and it was affirmed on appeal. (*Id.* at 30, 87-124.) On August 20, 2008, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), claiming discrimination and retaliation. (*Id.* at 252, 279-84.) The EEOC sent Plaintiff a dismissal and a notice of right to sue on January 6, 2009, and Plaintiff filed this lawsuit on April 7, 2009. (*Id.* at 311-14, 322.)

Plaintiff alleges that DISD transferred her involuntarily from the Benefits Department to Reading First, where Hughes placed her on administrative leave after she got up to make a copy of a memorandum that Hughes had made her sign. (Compl. at 2-3.) Plaintiff also alleges that DISD involuntarily transferred and in fact demoted her to PE, where her supervisor (Storey) subjected her to meaningless work, worked and made cell phone calls in her car rather than in the same office with Plaintiff, and made DISD investigate Plaintiff for unknown reasons. (*Id.* at 4-5.) Plaintiff alleges that her move to Travis was meant to be a promotion, but neither Smith nor Human Resources told her that she would not be paid a salary for the first three months. (*Id.* at 6.) Plaintiff further alleges that Smith terminated her and discussed Plaintiff's personal business, including her financial woes

and health problems, with staff and co-workers in violation of the ADA and HIPAA. (*Id.* at 6.) She alleges that her managers treated her poorly and kept her "ill, stressed, and under duress;" "attacked her for her physician and dental visits;" retaliated against her when she brought matters to DISD's attentions; wrote her up profusely each time she became ill, attended doctor's appointments or attended class; harassed, demeaned, and criticized her; wrote her up falsely; warned her for no good reason; and threatened her with loss of employment weekly. (*Id.* at 3.) Plaintiff also alleges that she was denied FMLA leave while a white female was granted leave for a similar illness, and that Smith interrogated her about her FMLA leave, tried to rush reprimands through in order to terminate her before her FMLA leave was in place, and even stated that she would not have hired her had she known about her previous FMLA leaves. (*Id.* at 11-13.)

On June 3, 2010, DISD moved for summary judgment on all of Plaintiff's claims, (*see* docs. 34-37), and the issues are now ripe for consideration.

## II. DISD'S MOTION TO STRIKE SUR-REPLY (DOC. 72)
## PLAINTIFF'S MOTION TO FILE A RESPONSE (DOC. 73)

DISD moves to strike Plaintiff's sur-reply on grounds that she failed to seek leave and did not provide any basis for filing a sur-reply. Plaintiff in turn seeks leave to file an out-of-time response to the motion to strike to the extent that her September 3, 2010 filing is untimely. *See* doc. 73; L.R. 7.1(e). The motion for leave to file an untimely response is **GRANTED**.

A sur-reply is appropriate only when "the movant raises new legal theories or attempts to present new evidence at the reply stage," and only when a party seeks leave of court to file a sur-reply. *See Murray v. TXU Corp.*, 2005 WL 1313412, at *4 (N.D. Tex. 2005). DISD's reply did not raise new legal theories or present new evidence. Plaintiff's response to the motion to strike does not provide any basis for filing a sur-reply other than to reassert her summary judgment arguments

and discovery contentions.  *See* doc. 74.  The motion to strike Plaintiff's sur-reply is **GRANTED**.

### III.  DISD'S MOTION TO STRIKE AFFIDAVITS (DOC. 62)

DISD also moves to strike Plaintiff's affidavits[3] on grounds that they are unsworn.  Plaintiff responds that she "told the truth to the best of her knowledge."  (*See* doc. 69.)

An affidavit opposing a motion for summary judgment must be sworn in order "to raise a fact issue precluding summary judgment."  *See Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988).  An unsworn declaration may substitute for an affiant's oath if it is made "under penalty of perjury" and is "verified as true and correct."  *See id.* (citing 28 U.S.C. § 1746); *accord Washington v. Moore*, 990 F.2d 626, 626 (5th Cir. 1993).  Attorneys and *pro se* litigants alike must strictly comply with the requirement of sworn statements, and courts should require correction of any deficiencies in supporting papers that they intend to rely on.  *See Gordon v. Watson*, 622 F.2d 120, 123 (1980); *accord Brady v. Blue Cross and Blue Shield of Texas, Inc.*, 767 F.Supp. 131, 135 (N.D. Tex. 1991) (Fitzwater, J.).  The statements made in Plaintiff's purported affidavits are unsworn, and are neither made under penalty of perjury nor verified as true and correct.  (*See* doc. 52, pp. ID. 700-15.)  Since these statements may not be construed as affidavits or other competent summary judgment evidence, DISD's motion to strike these documents is **GRANTED**.  *See Brady*, 767 F.Supp. at 135.

### IV.  DISD'S MOTION TO STRIKE EVIDENCE (DOC. 63)

DISD also moves to strike exhibits in Plaintiff's appendix on grounds that they contain unsworn statements, are not properly authenticated, contain facts not within her personal knowledge, contain vague statements constituting legal and factual conclusions, contain hearsay, are not

---

[3]  These affidavits are located in doc. 52, pp. ID. 700-15.

relevant, and are documents not produced in discovery. (*See* docs. 62, 63.)

## A.    <u>Unsworn Statements</u>

DISD moves to strike Plaintiff's original complaint and certain other exhibits[4] on grounds that they contain unsworn statements. (*See* doc 63 pp. ID. 2263-66, 2275-78.) The documents at issue contain unsworn statements that are neither made under penalty of perjury nor verified as true and correct. DISD's motion to strike these documents is therefore **GRANTED**.

## B.    <u>Unauthenticated Exhibits</u>

DISD also moves to strike some of Plaintiff's exhibits as unauthenticated.[5] (*See* doc. 63. pp ID. 2259-63.) Authentication is a condition precedent to admissibility. Fed. R. Evid. 901(a). Some types of evidence are self-authenticating and require no extrinsic foundation for admission, such as public documents under seal, certified copies of public documents, official publications, acknowledged documents, and certified domestic records of regularly conducted activity. *See* Fed. R. Evid. 902; *McIntosh v. Partridge*, 540 F.3d 315, 322 n. 6 (5th Cir. 2008). Evidence that is not self-authenticating does not require conclusive proof of authenticity, only some evidence sufficient to support a finding that the evidence is what the proponent claims it to be. *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993). The exhibits here are neither self-authenticating nor supported

---

[4] These exhibits are located in docs. 52-55, pp. ID. 730, 890-91, 894-911, 934, 950, 981, 983, 992-97, 999-1004, 1008-09, 1104-12, 1121-26, 1152-57, 1175, 1188, 1202, 1227-28, 1244-45, 1249-51, 1255-68, 1270-76, 12-78-79, 1284, 1333-39, 1361-62, 1364-66, 1375-79, 1383, 1414, 1455, 1457-61, 1464-66, 1468-69, 1474-77, 1480, 1534, 1581, 1640, 1664, 1758, 1839-40, 1846-60, 1863, 1867-78, 1880. DISD objects only as to the hand-written notes on pp. ID. 1227, 1244-45, 1249-51, 1275-76, 1278-79, and objects to the exhibits located on pp. ID. 1468-69 only to the extent offered for reasons other than to show that Plaintiff filed a grievance.

[5] These exhibits are located in docs. 52-55, pp. ID. 716-46, 754-86, 790-858, 862-68, 870-72, 890-91, 893-913, 934-45, 947-51, 962-63, 965, 991-1009, 1011-81, 1086, 1104-18, 1121-49, 1152-1223, 1226-32, 1235-45, 1249-79, 1281-84, 1332-88, 1390-1414, 1447-48, 1454-1517, 1581, 1584-91, 1634-84, 1688-97, 1701-03, 1705-13, 1717, 1722-25, 1738, 1742, 1745, 1747-1806, 1836-1982, 1992-95, 1998-2008, 2091-2120. DISD objects only as to the hand-written notes on pp. ID. 1227, 1244-45, 1249-51, 1275-76, 1278-79

by evidence of authentication.  DISD's motion to strike these exhibits  is therefore **GRANTED**.

## C.    No Personal Knowledge

DISD also moves strike to certain exhibits[6] in Plaintiff's appendix as containing facts not within Plaintiff's knowledge.  (*See* doc. 63, pp. ID. 2266-67.)  While Rule 56(e) requires an affidavit to be made on personal knowledge, there is no requirement for an explicit statement that the affidavit is made on personal knowledge.  *See* Fed. R. Civ. P. 56(e)(1); *Directv, Inc. v.*, 420 F.3d 521, 530 (5th Cir. 2005).  It is enough if such knowledge can reasonably be inferred from the affiant's position.  *See Budden*, 420 F.3d at 530.  Here, all but two of the exhibits have been stricken on other grounds. Of the remaining two exhibits, one speculates that Smith's "conflict" and anger were because of Plaintiff's suggestions to improve payroll (doc. 52, p. ID. 731), while the hand-writing at issue on the second one questions whether Smith reprimanded other employees for failure to clock out (doc. 53-2, p. ID. 1245).  Since the material at issue is not based on personal knowledge, the motion to strike it is **GRANTED**.  The motion is otherwise **DENIED** as moot.

## D.    Vague Statements

DISD also moves to strike some of Plaintiff's exhibits[7] because they contain vague statements constituting impermissible legal or factual conclusions.  (*See* doc. 63, pp. ID. 2267-68.) Since the material subject to the motion has been stricken on other grounds, the motion is **DENIED** as moot.

---

[6] The exhibits are located in docs. 52-55, pp. ID. 731, 894-98, 1104-12, 1121-27, 1133, 1152-58, 1164, 1175, 1188, 1202, 1229-32, 1245, 1255-68, 1270-74, 1284, 1414, 1464-66, 1534, 1758, 1846-60, 1863, 1874-75. DISD objects only as to the hand-writing on page 1245.

[7] These exhibits are located in docs. 52-55, pp. ID. 731, 890-91, 894-911, 934, 950, 981, 983, 1013, 1104-12, 1127, 1133, 1158, 1164, 1175, 1202, 1228, 1245-45, 1249-51, 1255-76, 1278-79, 1375-79, 1414, 1455, 1457-61, 1464-66, 1468-69, 1534, 1708-12, 1846-60, 1863, 1874-75.  The objections with respect to pp. ID. 1244-45, 1249-51, 1257-76 and 1278-79 are as to hand-writing only.

## E.     **Inadmissible Hearsay**

DISD also moves to strike several of Plaintiff's exhibits[8] as inadmissible hearsay.  (*See* doc. 63, pp. ID. 2269-71.) The exhibits subject to this motion and not yet stricken consist of a doctor's statement about Plaintiff's blood pressure and medication; a medical statement diagnosing Plaintiff with knee pain, hypertension, diabetes, and shortness of breath; blood pressure readings from a school nurse; and a charge of discrimination.  (*See* doc. 52-54, pp. ID. 721, 1102-03, 1743-44.)  The medical records are hearsay because they are out of court statements offered to prove the truth of the matter asserted.  *See* Fed. R. Evid. 801 and 802.  The charge of discrimination constitutes hearsay  to the extent it is offered to prove the truth of the harm stated therein.  *Id.*  Plaintiff does not argue or meet her burden to show that the hearsay exceptions listed in Fed R. Evid. 803 and 804 apply.  *See Sowders v. United Corp.*, 2007 WL 3171797, at *1 (W.D. Tex. Aug. 15, 2007).  DISD's motion to strike these specific exhibits is **GRANTED** but is otherwise **DENIED** as moot.

## F.     **Not Relevant**

DISD moves to strike some of Plaintiff's exhibits[9] as simply not relevant under Fed. R. Evid. 401.  (*See* doc. 63. pp. ID. 2271-73.)  The Federal Rules of Evidence provide that only relevant evidence is admissible, i.e. "evidence having any tendency to make the existence of any fact that is

---

[8] These exhibits can be found in docs. 52-55, pp. ID. 716, 721, 731, 768, 850, 857-58, 890-891, 894-911, 944, 962-63, 965, 1013, 1028-34, 1043-46, 1064-69, 1104-10, 1115-18, 1121-26, 1144, 1146-49, 1152-57, 1176-1201, 1203-19, 1226, 1228-32, 1253-68, 1270-74, 1332-39, 1344-46, 1349-62, 1364-66, 1368, 1375-79, 1459-61, 1464-66, 1649-63, 1665-68, 1673-78, 1701-03, 1722-25, 1742-45, 1758, 1846-60, 1874-75.  DISD objects to the exhibits on pp. ID. 1468-1469 to the extent they are offered to prove the truth of the matter asserted and not just to show that Plaintiff filed a grievance, to pp. ID 1102-03 to the extent that Plaintiff is introducing the exhibit to prove the truth of the personal harm stated therein, and objects only as to the hand-writing on pp. ID. 1227, 1244-45, 1249-50, and 1275-76.

[9] These exhibits are located in docs. 52-55, pp. ID 716, 721, 723-30, 739, 769, 786, 791, 871-72, 913, 942, 1083, 1121-26, 1151-57, 1189-1223, 1226, 1229-32, 1243, 1253-54, 1269, 1280, 1286-88, 1332-60, 1364-66, 1368, 1384-88, 1447-48, 1667-68, 1689-97, 1738, 1759-91.

of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 & 402. Here, the only evidence subject to this exception not stricken on other grounds consists of some e-mails, a blank DISD form, a customer satisfaction survey of Plaintiff, and a document appearing to be DISD's policy concerning employee welfare. (*See* doc. 52-53, pp. ID. 723-29, 739, 1083, 1151, 1280, 1286-88.) The relevance of this evidence is not discernable from the evidence itself, and Plaintiff has not explained its relevance. DISD's motion to strike this specific evidence is **GRANTED**, and its motion is **DENIED** as moot otherwise.

DISD also moves to strike Plaintiff's exhibits[10] pertaining to events that pre-date her May 14, 2007, to October 28, 2007, tenure at Travis as time-barred and therefore not relevant to any claims arising from that tenure. (*See* doc. 63, pp. ID. 2273-74.) Some of these exhibits have already been stricken, while DISD has not shown that the remaining exhibits are time-barred with respect to all of Plaintiff's claims. (*See* docs. 52-53, pp. ID. 717-20,736-38, 740-45.) Accordingly, the motion to strike these specific exhibits is **DENIED**, and the motion is otherwise **DENIED** as moot.

DISD also moves to strike exhibits regarding DISD's employees at Travis Academy[11] on grounds that they are not relevant. Only one exhibit subject to this objection has not been stricken yet, and concerns Jettie Hunt, an individual that Plaintiff claims was in similar circumstances but was treated differently. (*See* doc. 52, p. ID. 722.) The exhibit shows that Hunt worked overtime and failed to timely clock out, and therefore makes it more probable, even if to the slightest extent, that Hunt was in circumstances nearly identical to Plaintiff but was treated differently. The exhibit

---

[10] DISD objects to exhibits located in doc. 52-55, pp. ID 717-29, 736-46, 754, 760-85, 790, 792-854, 934, 977-89, 991-1009, 1104-18, 1144-45, 1454-1517, 1581, 1584-91, 1717, 1747-1806, 1836-1982, 2091-2120

[11] These exhibits are found in docs. 52-53, pp. ID. 722, 755-59, 1127, 1131, 1133, 1135-43,1158-62, 1164, 1166-75, 1178-79, 1181-87, 1189-1200, 1202-19.

is relevant given the low threshold of Rule 401, and the motion to strike it is **DENIED.** The motion is otherwise **DENIED** as moot.

## G.     Documents Not Produced in Discovery

Defendant also moves to strike some of Plaintiff's exhibits as documents not produced in discovery. (*See* doc. 63, p. ID. 2267-68.) All but one of the exhibits at issue here have been stricken on other grounds. A duplicate of the remaining exhibit has been stricken as irrelevant. (*See* doc. 53, p. ID. 1120; doc. 53-1, p. ID. 1151.) The motion to strike is therefore **DENIED** as moot.

## V.  PLAINTIFF'S DISCOVERY-RELATED MOTIONS

Plaintiff's complaints in her response to DISD's summary judgment motion about DISD's failure to provide discovery could liberally be construed as a motion for a continuance under Fed. R. Civ. P. 56(f). (Resp. at 1-5.)

When a party believes it needs more time to obtain discovery to respond satisfactorily to a motion for summary judgment, Rule 56(f) is the proper remedy. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir.1991). Rule 56(f) provides: "If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." Ordinarily, Rule 56(f) discovery motions are "broadly favored and should be liberally granted" because the rule is designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir.2006). The Fifth Circuit does not impose a literal interpretation of Rule 56(f) upon *pro se* litigants. *Joseph v. City of Dallas*, No. 07-11235, 2008 WL 1976619, at *8 (5th Cir. May 6,

2008) (per curiam) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Int'l Shortstop*, 939 F.2d at 1266-67). However, at a minimum, a party must show: (1) why she needs additional discovery; and (2) how that discovery would likely create a fact issue that would defeat summary judgment. *See Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir.1999).

Here, although Plaintiff claims that DISD did not respond to several of her discovery requests, she specifically claims that she did not receive all documents related to her alleged abuse of work hours. Even assuming that such discoverable documents exists, Plaintiff has not shown by affidavit how the documents would likely create a material fact issue for trial. Any motion under Rule 56(f) should therefore be denied.

Plaintiff also claims that DISD should be sanctioned pursuant to Rule 26(a) and Rule 37. (Resp. at 1.) She argues that DISD purposely withheld discoverable information from her, took unfair advantage of her, withheld paperwork from her, and failed to participate in discovery in good faith. (Resp. at 1-2, 21-22.) She argues that DISD hindered her ability to obtain affidavits from DISD employees by warning and threatening them, and questions the authenticity of the affidavit of Regina Rice. (*Id.* at 21-22.) Plaintiff's motion is not procedurally proper, and is untimely for being filed after the discovery deadline and outside the deadline for motions not specifically covered by the Court's scheduling order. (*See* doc. 22.) Plaintiff's motion for sanctions should therefore be denied.

## VI. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## VII. TORT CLAIMS

DISD first moves for summary judgment on Plaintiff's claims for intentional infliction of emotional distress, defamation/slander, abuse of process, and any common law civil conspiracy and retaliation claims as barred by governmental immunity. (Mot. Br. at 13-14.)

"Sovereign immunity generally defeats a court's subject matter jurisdiction over a suit against a state unless the state expressly consents to suit." *Austin v. Hood County*, 2007 WL 1544379, at *2 (N.D. Tex. May 29, 2007) (citing *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)). "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts." *Id.* Therefore, a political subdivision of the state of Texas is not liable for the acts or conduct of its employees unless its governmental immunity is waived by the Texas Tort Claims Act ("TTCA"). *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). The TTCA waives governmental immunity in three

general areas: "use of publicly owned vehicles, premises defects, and injuries arising from conditions or use of property." *Brown v. Montgomery County Hosp. Dist.*, 905 S.W.2d 481, 484 (Tex. App. – Beaumont. 1995); *see also* Tex. Civ. Prac. & Rem. Code § 101.021. For school districts, the Act's waiver is even narrower and is limited to tort claims involving injuries arising out of the negligent use or operation of motor vehicles. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021 & 101.051; *Mission Consol. Ind. Sch. Dist. v. Garcia*, 253 S. W. 3d 653, 656 (Tex. 2008). Additionally, governmental immunity is not waived for intentional torts. *See* Tex. Civ. Prac. & Rem. Code § 101.057(2); *Fields v. Dallas Cnty. Schs.*, 2007 WL 836863, at * 2 (N.D. Tex. Mar. 15, 2007).

Here, Plaintiff's state law claims for intentional infliction of emotional distress, defamation, slander, abuse of process, and conspiracy involve intentional conduct, and any state law claim of retaliation does not involve injuries arising out of the negligent operation or use of a motor vehicle. *See Dorward v. Ramirez*, 2009 WL 2777880, at*14-15 (N.D. Tex. Aug. 28, 2009) (Fitzwater, C.J.) (abuse of process claim and state law conspiracy claims intentional torts); *Alcala v. Tex. Webb Cnty.*, 620 F.Supp.2d 795 (S.D. Tex. 2009) (defamation and intentional infliction of emotional distress claims intentional torts). All of these claims are therefore barred by governmental immunity and should be dismissed as a matter of law with prejudice.[12]

## VIII.   TEXAS TORT CLAIMS ACT

DISD also moves for summary judgment on Plaintiff's "Texas Tort Claims Act" claim on grounds that there is no general TTCA claim, and Plaintiff does not allege the negligent operation

---

[12] Since dismissal is required on this ground, the other grounds for dismissal of these claims presented in subsections C, D, E, and J of DISD's brief in support of its motion for summary judgment are not considered.

or use of a motor vehicle by DISD. (Mot. Br. at 26.)

The TTCA does not create a cause of action but "provides a limited waiver of governmental immunity." *See Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). As noted, TTCA's waiver for school districts is limited to tort claims involving injuries arising out of the negligent use or operation of motor vehicles. *See Garcia*, 253 S. W. 3d at 656 (Tex. 2008). Since DISD's alleged conduct does not involve this type of injury, any causes of action under the TTCA should be dismissed with prejudice.

## IX. TITLE VII CLAIMS

DISD also moves for summary judgment on Plaintiff's Title VII claims. (Mot. Br. at 26.) DISD asserts that although listed as multiple causes of action, Plaintiff's claims for wrongful termination, illegal reason for employment discharge, racial discrimination, harassment, isolation, and disparate treatment all fall within Title VII. (*Id.* at 27.)

### A. Time-Barred Claims

DISD first argues that since Plaintiff filed her charge of discrimination on August 20, 2008, any Title VII claims based on acts occurring before October 25, 2007, are time-barred. (Mot. Br. at 28.)

Title VII of the Civil Rights Act prohibits discrimination against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Before pursuing a Title VII claim in federal court, an individual must exhaust his administrative remedies by filing a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). While timely filing

of an EEOC charge is a prerequisite to maintaining a Title VII action, *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555 n. 4 (1977), an equitable exception to the timely-filing requirement is the "continuing violation doctrine." *Waltman v. Int'l. Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989).

A plaintiff seeking to invoke the continuing violation doctrine "must demonstrate more than a series of discrete discriminatory acts." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001). "'He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence that gives rise to the cause of action.'" *Id.* (quoting *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)). A "one-time employment event," such as a failure to hire, promote, or train, or a dismissal or demotion, is the "'sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.'" *Id.* (quoting *Huckabay*, 142 F.3d at 240). "'[D]iscrete adverse actions, although racially motivated, cannot be lumped together with the pattern of racial harassment,' and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine." *Id.* Even though a hostile work environment claims is "potentially more compatible with the continuing violation doctrine," the doctrine does not automatically attach in such claims and "the burden remains on the employee to demonstrate an organized scheme led to and included the present violation." *Celestine*, 266 F.3d at 352. (citing *Hackabay*, 142 F.3d at 239).

Since Plaintiff filed a charge of discrimination with the EEOC on August 20, 2008, any alleged acts that occurred on or before October 25, 2007, fall outside the 300-day filing period, unless subject to the continuing violation doctrine. DISD provides evidence showing that all of the alleged acts in this case, except Smith's recommendation for termination, occured outside the 300-day statutory window. DISD therefore has met its summary judgment burden. Plaintiff does not

offer any evidence sufficient to support a jury finding that the untimely acts were not merely a series of discrete discriminatory acts, but an organized scheme leading to and including a present violation. *See Celestine*, 266 F.3d at 352-53. Specifically, Plaintiff provides no evidence that any of the alleged acts by her supervisors were related to each other, or stemmed from the same source. Therefore, any Title VII claims arising out of acts that occurred on or before October 25, 2007, should be dismissed as time-barred.

## B.      Discrimination Claim

DISD next moves for summary judgment dismissing Plaintiff's Title VII discrimination claim. (*See* Mot. Br. at 28-33.)

### a.      Framework for Title VII Discrimination Claims

Claims for racial discrimination in the employment context are analyzed under Title VII's well established burden-shifting paradigm. "First, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998). A plaintiff may establish a *prima facie* case of discrimination through either direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Under the framework set forth in *McDonnell Douglas*, a plaintiff must show that she (1) belongs to a protected group; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by or was treated less favorably than a similarly qualified individual outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802.

If the plaintiff establishes a *prima facie* case, an "inference of intentional discrimination" arises. *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). The burden of

production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Okoye v. Univ. of Texas Houston Health Science Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)). Once the defendant has responded with a legitimate, non-discriminatory reason,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols*, 138 F.3d at 566. Under the mixed-motive alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that the protected characteristic was a motivating factor for the employment practice. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003).

### b. Ultimate Employment Decision

DISD first argues that even if the other acts are not time-barred, Plaintiff's termination is the only act which constitutes an ultimate employment decision necessary to maintain a Title VII discrimination claim. (Mot. Br. at 28-30.) Since all of DISD's alleged acts, except Plaintiff's termination have been time-barred, the Court need not decide whether Plaintiff's termination is the only act constituting an ultimate employment decision.

### c. Prima Facie Case

DISD next argues that Plaintiff cannot establish she was treated differently than other

employees and therefore cannot establish a prima facie case of discrimination. (Mot. Br. at 30-31.) In order to establish a *prima facie* case of discrimination, an employee alleging discrimination must show that she was treated differently than similarly situated employees. *Lee*, 574 F.3d at 259. An employee that "proffers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Id.* at 259-60 (quoting *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee*, 574 F.3d at 260 (citing *Okoye*, 245 F.3d at 514).

Plaintiff stated in her interrogatory responses that Smith treated Hunt, a white female, and Romero, a Hispanic female, differently even though they engaged in conduct that Smith accused Plaintiff of, i.e. "doctor appointments, illnesses, absences, failure to clock in or out, others having to do your work when ill." (D. App. at 223.) DISD provides evidence showing that Plaintiff was discharged for unprofessional conduct, tardiness, failure to follow directives, and insubordination. (D. App. at 54.) DISD also proffers affidavit evidence showing that Romero and Hunt had worked with Smith for years without any disciplinary problems, and that Hunt did not share the same responsibilities as Plaintiff. (D. App. at 29-30, 57.) DISD has met its summary judgment burden.

The burden now shifts to Plaintiff to identify evidence in the record raising a genuine issue of material fact that DISD treated her differently than similarly situated employees. Plaintiff makes unsworn statements that Hunt and Romero were tardy and failed to timely clock out, but does not direct the Court's attention to any competent summary judgment evidence sufficient for a reasonable

jury to conclude that they were unprofessional, insubordinate, or failed to follow directives. She therefore has failed to meet her summary judgment burden. Since there is no genuine issue of material fact on at least one element of Plaintiff's *prima facie* case for discrimination, DISD is entitled to summary judgment on Plaintiff's discrimination claim under Title VII.

### d. Legitimate non-discriminatory reason

Assuming that Plaintiff established a prima facie case of discrimination, DISD proffers evidence showing that it had a legitimate, non-discriminatory reason for denying her the disputed benefits. (Mot. Br. at 32-33.) If an employee alleging discrimination establishes a *prima facie* case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The employer's proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory. *See Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993).

DISD offers evidence that during her time at Travis, Plaintiff was confrontational and argumentative, was rude to Smith in a staff meeting and at a planning conference, made false statements to staff about Smith, questioned Smith's whereabouts unnecessarily and negatively, made unapproved purchases, failed to follow directives, left campus without proper notification, arrived ten minutes to forty-five minutes late on several occasions, failed to timely clock out, used her cell phone at work, did not follow telephone etiquette, and was rude and unhelpful to parents and substitute teachers. DISD points out that Smith reprimanded and ultimately recommended Plaintiff's termination based on this conduct. DISD has met its summary judgment burden. *See Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 32 (5th Cir. 1997) (poor job performance and difficulty working with others are legitimate, non-discriminatory reasons for termination). The burden now

shifts to Plaintiff to raise a genuine issue of material fact either by showing that DISD's proffered reasons are a pretext for discrimination or that race was a motivating factor in DISD's termination decision.

### e.    Pretext/Mixed-Motives

Plaintiff essentially disagrees with DISD's assessment of her performance and argues that Romero and Hunt were treated differently.  As discussed earlier, Plaintiff's assertion that Romero and Hunt were tardy and failed to timely clock out, even if supported by evidence, is not sufficient for a reasonable jury to conclude that they were in nearly identical circumstances.  Additionally, plaintiff's unsupported assertion that Smith lied in her reprimands to get her terminated is not sufficient for a jury finding of pretext or discriminatory motive.  *See Steele v. SGS-Thomson Microelectronics, Inc.*, 962 F.Supp. 972, 978 (N.D. Tex. 1997).  "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."  *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1997).  Plaintiff has not identified evidence of discriminatory intent.  The Court should dismiss Plaintiff's Title VII discrimination claim with prejudice.

## C.    <u>Disparate Treatment</u>

DISD moves to dismiss Plaintiff's disparate treatment claim on grounds that Plaintiff cannot assert a *prima facie* case.  (Mot. Br. at 33.)  In order to establish a *prima facie* case of discrimination in a disparate treatment case, a plaintiff must show that she (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) other similarly situated employees were treated more favorably in nearly identical circumstances.  *See Bryan v. McKinsey & Co. Inc.*, 375 F.3d 358, 360 (5th Cir. 2004); *Williams v. Trader Pub. Co.*, 218

F.3d 481, 484 (5th Cir. 2000); *Lee*, 574 F.3d at 259. For the same reasons discussed above, Plaintiff has not raised a fact issue concerning whether she was in circumstances nearly identical to Hunt and Romero. Plaintiff's disparate treatment claim should therefore also be dismissed.

**D.    Harassment/Hostile Work Environment Claim**

DISD also moves for summary judgment on Plaintiff's generalized harassment claim, construing it as a hostile work environment claim.[13] (Mot. Br. at 33-35.) Plaintiff's harassment claim is based on allegations that Hughes criticized her hostilely, threatened her, and rushed her assignments; Storey demeaned her, gave her multiple confusing instructions, assigned her repetitive meaningless work, unnecessarily criticized her, and refused to work in the office with her; and Smith treated her unfairly, isolated her, singled her out for reprimands, and treated her worse than other employees with more serious infractions. (D. App. at 222.)

In order to establish a hostile work environment claim under Title VII, a plaintiff must prove that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Where, as here, the alleged harasser is a supervisor, a plaintiff is not required to prove the fifth element. *Celestine*, 266 F.3d at 353-54 (citation omitted).

DISD points out that Plaintiff's allegations related to Hughes and Storey are time-barred, and directs the Court's attention to an absence of evidence showing that Smith's conduct towards

---

[13] *See Jarvis v. Enterprise Fleet Servs. & Leasing Co.*, 2010 WL 1068146, at *18 (D. Md. Mar. 17, 2010) (construing Plaintiff's generalized harassment claim as alleging a hostile work environment claim under Title VII).

Plaintiff was based on her race. (Mot. Br. at 34-35.) Since Plaintiff bears the burden of proof at trial, DISD has met its summary judgment burden by pointing out an absence of evidence to support an essential element of Plaintiff's claim. *See Celotex*, 477 U.S. at 325. If Plaintiff cannot create a fact issue as to that element, summary judgment is appropriate on her claim. *See Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001) (citing *Celotex*, 477 U.S. at 322-23). Since Plaintiff has failed to provide any evidence showing that Smith's conduct was based on race, her harassment/hostile work environment claim should be dismissed.

## E.  Retaliation

DISD also moves for summary judgment dismissing Plaintiff's retaliation claim under Title VII. (Mot. Br. at 35-37.) Plaintiff's interrogatory response states that Hughes retaliated against her for alerting management to her hostile and demeaning treatment, Storey retaliated against her for reporting her actions to Renita Berry and others, and Smith retaliated against her for the simple reason that she knew her job and Smith felt that she was "showing her up." (D. App. at 221-22.)

### a.  Framework for Title VII Retaliation Claims

Retaliation claims under Title VII are analyzed under the burden-shifting framework applicable to Title VII discrimination claims. A plaintiff must first establish a *prima facie* case of retaliation by showing that (1) she participated in activity protected by Title VII, (2) she suffered an adverse employment action, and (3) a causal connection existed between her protected activity and the adverse employment action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). If the plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If the employer meets its burden of production, the

plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that

the employer's reason is not true, but is instead a pretext for retaliation, or (2) that the employer's

reason, while true, is only one of the reasons for its conduct and another motivating factor is the

plaintiff's protected activity. *See Rachid*, 376 F.3d at 312; *Cothran v. Potter*, 2010 WL 1062564,

at *5 (N.D. Tex. Mar. 22, 2010).

### b. Prima Facie Case

DISD first argues that Plaintiff cannot present any evidence to show that she engaged in

activity protected under Title VII. (Mot. Br. at 36-37.) An employee has engaged in protected

activity under Title VII if he or she has "opposed any practice made an unlawful practice" by Title

VII, or "made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing" under Title VII. *Aryain v. Wal-Mart Stores Inc.*, 534 F.3d 473, 484 (5th Cir.

2008) (citing 42 U.S.C. § 2000e-3(a)). A plaintiff's complaint that does not mention discrimination

or other unlawful practice is not enough to satisfy the "opposition clause."[14] *See Fox v. Eagle

Distrib. Co.*, 510 F.3d 587, 592 (6th Cir. 2007). In case of a proper complaint, however, the

employee need not prove that the employer's "practices were actually unlawful, only that he had

reasonable belief that the employer was engaged in unlawful employment practices." *Byers v.

Dallas Morning News, Inc.*, 209 F.3d 419 (5th Cir. 2000).

As stated, Title VII prohibits discrimination against an individual "with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. DISD points out that Plaintiff's

---

[14] The "participatory clause" is irrelevant here becuase Plaintiff did not file a charge of discrimination until after the alleged retaliatory activity. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419 (5th Cir. 2000).

interrogatory responses do not indicate that her complaints concerned discrimination based on race, color, sex, or religion. (Mot. Br. at 37.) Plaintiff's response does not point out evidence sufficient for a jury to find that her complaints concerned discrimination based on a protected characteristic. Summary judgment should therefore be granted in DISD's favor with respect to her retaliation claim.

  **c.**  **Legitimate, Non-Retaliatory Reason**

Assuming that Plaintiff can establish a prima facie case of retaliation, DISD has proffered a legitimate, non-retaliatory reason for the alleged conduct. (Mot. Br. at 37.) As discussed with respect to Plaintiff's discrimination claim, DISD has provided evidence sufficient for a reasonable jury to conclude that any conduct of Plaintiff's supervisors, including the termination decision was related to her job performance and her disciplinary problems. The burden now shifts to Plaintiff to provide evidence to support a jury finding that DISD's proffered reason is either a pretext for retaliation, or that Plaintiff's protected activity was a motivating factor in her termination decision.

  **d.**  **Pretext/Mixed Motives**

Plaintiff has failed to provide evidence of pretext or retaliatory motive, and summary judgment in favor of DISD is appropriate on her Title VII retaliation claim as well.

## X. SECTION 1981 CLAIM

DISD also moves for summary judgment on Plaintiff's § 1981 claim, arguing among other things that the burden-shifting framework applicable to her Title VII claims also applies to her § 1981 claim. (*See* Mot. Br. at 37-38.)

"As a general matter, section 1981 serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race. Section 1981 also provides

a means of compensating a victim of racial discrimination." *Carroll v. General Accident Ins. Co. of Am.,* 891 F.2d 1174, 1176 (5th Cir. 1990).  To establish a right to relief under § 1981, a plaintiff must show: (1) that she belongs to a racial minority; (2) that the defendant intended to discriminate against her on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute.  *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). Claims of employment discrimination brought under § 1981 are governed by the same substantive legal standards and evidentiary framework applicable to claims brought under Title VII.  *See, e.g. Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002). Since the same evidentiary burdens apply, a claim that fails on the merits under Title VII likewise fails under § 1981.  Because Plaintiff fails to make a prima facie showing of race discrimination or retaliation under Title VII or overcome DISD's legitimate, non-retaliatory reason with evidence of pretext or mixed motives, her § 1981 fails.[15]  DISD is therefore entitled to summary judgment on Plaintiff's § 1981 claim.

## XI.  SECTION 1983 CLAIM

DISD also moves to dismiss Plaintiff's § 1983 claim, arguing that Plaintiff has not shown a violation of a substantive right needed to maintain a § 1983 claim, and that Plaintiff has failed to identify any DISD custom or policy that caused Plaintiff's alleged damages.[16]  (Mot. Br. at 37-40.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of

---

[15] Even though the statute of limitations for § 1981 claims under Texas law is two years, *Byers v. Dallas Morning News Inc.*, 209 F.3d 419, 424 (5th Cir. 2000), the two-year period starting April 7, 2007, mostly covers Plaintiff's tenure at Travis.  Any allegations related to that tenure have been addressed with respect to her Title VII claims, and Plaintiff has not specifically alleged any other DISD acts that fall within the limitations period.

[16] Even though Plaintiff invokes § 1983 in the jurisdiction and venue section of her complaint, she does not address it as a separate cause of action.

a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must "(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person or entity acting under color of state law." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (1998) (citation omitted). Additionally, under § 1983, "a municipality or local governmental entity such as in independent school district may be held liable only for acts for which it is actually responsible," and not on a *respondeat superior* theory, for example, for the torts of its employees. *See id.* A municipality or a governmental entity such as the DISD may be liable under § 1983 only if the execution of its customs or policies deprives a plaintiff of his constitutional rights. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690-91(1978). The plaintiff must show an "underlying claim of a violation of rights" as well as "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir.2005). Whether a particular individual or entity is a policymaker is a question of state law. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir.1993). Under Texas law, "policymaking authority in an independent school district, such as the DISD, rests with the district's board of trustees." *Id.*

DISD correctly points out that Plaintiff has not identified an official policy or custom by its board of trustees that violated a constitutional right, and Plaintiff does not make that identification in her response. Since there is no genuine material fact issue that a DISD custom or policy deprived Plaintiff of any federally protected right, her § 1983 claim should be dismissed with prejudice.

## XII.   CONSPIRACY CLAIM UNDER 42 U.S.C. § 1985

DISD also moves for summary judgment on any conspiracy claim predicated on 42 U.S.C

§ 1985. (Mot. Br. at 40-41.)

Section 1985 prohibits a conspiracy to deprive a person of equal protection of the laws, or of equal privileges and immunities under the laws. *See* 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must allege that "(1) a race or class-based discriminatory animus lay behind the conspiracy and (3) the conspiracy aimed to violate rights protected against private infringement." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001). The Fifth Circuit requires "'an allegation of a race-based conspiracy' to present a claim under § 1985(3)." *Id.* (citing *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000).

DISD correctly points out that Plaintiff not only fails to allege any racial animus behind the alleged conspiracy, but admits in her deposition that the conspiracy was not racially based. (*See* Mot. Br. at 41, citing D. App. at 256.) DISD has met its summary judgment burden. Plaintiff responds that Smith and Berry conspired to terminate her, and that Palmer criticized her "probably at the coercion of Smith," but does not even argue, much less offer evidence sufficient for a reasonable jury to conclude that the conspiracy, if any, was motivated by racial animus. (*See* Resp. at 37.) Since Plaintiff has failed to meet her burden, any conspiracy claim based on § 1985(3) should be dismissed with prejudice.

## XIII.  ADA CLAIMS

DISD also moves to dismiss Plaintiff's discrimination and retaliation claims under the ADA. (Mot. Br. at 41-47.) Plaintiff claims that she was discriminated against because of her health condition and her disability which was well known in the district, because Smith discussed her health conditions with staff, and because she stated that she would not have hired Plaintiff had she known that she had been on FMLA leave previously. (Compl. at 14.)

**A.**     **Discrimination Claim**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir.2000). A "public entity" is broadly defined to include "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). A claim of discrimination under the ADA may be established by presenting direct evidence or by using the indirect method of proof set out in *McDonnell Douglas*. *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir.1999). The employee must first establish a *prima facie* case of intentional discrimination by showing that she "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action, and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees." *Id.* The employer must then show a legitimate, non-discriminatory reason for its action. *Id.* "The employee ultimately bears the burden of showing that the employer's actions were motivated by considerations prohibited by the statute." *Id.* DISD moves for summary judgment on Plaintiff's ADA discrimination claim at every step of the burden shifting framework.

**a.**     **Prima Facie Case**

DISD contends that Plaintiff cannot establish that she suffered from a disability or was regarded as disabled, or that her disability, if any, caused an adverse action, and therefore cannot establish a *prima facie* case of discrimination. (Mot. Br. at 42-46.) Under the ADA, an individual with a disability is a person who (1) has a physical or mental impairment which substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is being

regarded as having such an impairment. 42 U.S.C. § 12102. Plaintiff does not allege that she was discriminated against because she had a record of an impairment substantially limiting on or more of her major life activities.

### i. *Had a Disability*

DISD first argues that Plaintiff cannot establish that she had a physical or mental impairment that substantially limited one or more of her major life activities. "Major life activities" include a non-exhaustive list of functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *E.E.O.C. v. Chevron Phillips Chem. Co.*, LP, 570 F.3d 606, 614 (5th Cir.2009). A person is substantially limited in one or more of his major life activities if he is "[u]nable to perform a major life activity that the average person in the general population can perform," or is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform the major life activity as compared to the condition, manner or duration in which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii); *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 469 (5th Cir.2009). In assessing whether an individual is substantially limited in a major life activity, a court should consider factors such as the nature and severity of the impairment, the duration or expected duration of the impairment, and the actual or expected permanent or long term impact of the impairment. 29 C.F.R § 1630.2(j)(2)(i)-(iii); *Chevron Phillips*, 570 F.3d at 614.[17]

---

[17] The ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110-325, 122 Stat. 3553 (2008), makes it easier for a plaintiff to show that she is an individual with a disability. *See Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 856, (5th Cir. 2010). However, the amendments that went into effect on January 1, 2009, are not retroactive and do not apply to conduct preceding them. *Agro*, 555 F.3d at 469 n.8 (citing *Rivers v. Roadway Express, Inc*., 511 U.S. 298, 313 (1994)). Here, the ADAAA does not apply because all of the alleged conduct by DISD precedes the effective date of the ADAAA. *See Cooper v. United Parcel Serv., Inc.*, 368 F.App'x. 469, 475 n.5 (5th Cir. 2010).

To show that Plaintiff is not disabled, DISD points to Plaintiff's reasonable accommodation request, and her interrogatory answers identifying her disability as hypertension. (*See* D. App. at 134, 225-26.) DISD correctly points out that hypertension alone, without any evidence that it substantially affects one or major life activities, does not meet the definition of a disability under the ADA. *Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 92 (5th Cir. 1996). DISD also points to Plaintiff's interrogatory answer that states she had no problems getting her work done with her disabilities, her illnesses were "controlled by medication" and except for the occasional FMLA leaves of absence, she could do her job without accommodation. (*See* D. App. at 226.) "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83 (1999), *superseded in part by statute*, ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553.

The burden now shifts to Plaintiff to identify evidence raising a genuine issue of material fact that she suffered from a disability. Plaintiff responds that she has problems with her knees that "now have been diagnosed as arthritis in the knees, rheumatoid arthritis, and gout in the feet." (Resp. at 30.) Plaintiff's reasonable accommodation request, her interrogatories, and her deposition identify her disability as hypertension, and describe issues with shortness of breath, severe edema or swelling of legs and feet, and difficulty climbing stairs. (*See* D. App. at 134, 225-26, 259.) To the extent Plaintiff asserts that her hypertension affected her climbing, climbing is not a "basic, necessary function" and does not "qualify as a major life activity under the ADA." *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 n. 2 (5th Cir.1996). While breathing is a major life activity, even "[s]everal instances of shortness of breath when climbing stairs do not rise to the level of

substantially limiting the major life activity of breathing." *Id.* Plaintiff has not provided any evidence sufficient for a reasonable jury to conclude that her breathing problems were severe or had a long-term or permanent duration or impact. Likewise, to the extent that Plaintiff has asserted that she is substantially limited in walking due to the severe edema, arthritis, and gout, she has provided no evidence to support this assertion. Individuals claiming disability status under the ADA may not rely merely on evidence of a medical diagnosis of an impairment, but must present " 'evidence that the extent of the limitation in terms of their own experience . . . is substantial.' " *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002), *superseded in part by statute*, ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553. Plaintiff has provided no such evidence.

### ii.     *Regarded as Disabled*

DISD also points out that Plaintiff's assertion that her health condition was well known in the District is not sufficient to raise a fact issue that the DISD regarded her as disabled. An individual may be regarded as disabled if she has a physical or mental impairment that does not substantially limit major life activities, but nonetheless is treated as if she had such a limitation. *See Boyd v. Dallas Indep. Sch. Dist.*, 2010 WL 1687665 (citing 29 C.F.R § 1630.2). Plaintiff does not present any competent summary judgment evidence that she was regarded as having an impairment that substantially limited a major life activity. Since Plaintiff has failed to establish at least one element of her prima facie case of ADA discrimination, her ADA discrimination claim should be dismissed with prejudice.

### b.     **Legitimate, Non-Retaliatory Reason**

Even if Plaintiff can establish a prima facie case of ADA discrimination, as discussed before, DISD has proffered legitimate non-retaliatory reasons for the alleged conduct. Plaintiff does not

refute DISD's legitimate non-retaliatory reasons with evidence that any of the alleged actions were motivated by discriminatory animus.[18] Therefore, summary judgment in DISD's favor is appropriate with respect to her ADA discrimination claim.

## B.    Retaliation Claim

DISD also moves for summary judgment on any retaliation claim Plaintiff has asserted under the ADA.  To show retaliation under the ADA, a plaintiff must first establish "(1) engagement in activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action."  *Seaman*, 179 F.3d at 301.  The defendant must then proffer a legitimate, non-retaliatory reason for the adverse employment action.  *Id.*  The plaintiff bears the ultimate burden of showing "that 'but for' the protected activity the employment action would not have occured."  *Id.*

DISD moves for summary judgment on Plaintiff's ADA retaliation claim on grounds that Plaintiff has failed to provide any evidence that she engaged in protected activity under the ADA.  A person engages in protected activity under the ADA, if he or she opposes an act or practice made unlawful by the ADA, or participates in an investigation, proceeding, or hearing under the ADA.  42 U.S.C. § 12293(a).  To the extent that Plaintiff asserts that she engaged in protected activity when she filed an FMLA request, this Court has held that an FMLA request is not protected activity under the ADA.  *Price v. City of Terrell*, 2001 WL 1012697, at *4 (N.D. Tex. Aug. 15, 2001) (Fitzwater, J.).  Additionally, she does not allege, or offer evidence, of complaints in which she stated that she

---

[18]  Although the Fifth Circuit has not directly addressed the question of whether the mixed-motives framework applies in the ADA context, the Court need not answer the question here because Plaintiff cannot meet both the mixed-motives and the pretext standards. *See Crouch v. J C Penney Corp., Inc.*, 337 F. App'x 399, 402  n. 1 (5th Cir.2009).

had a disability or which complained of specific discriminatory practices by her supervisors. *See id.* Any retaliation claim asserted by Plaintiff under the ADA therefore should be dismissed.

## XIV.  FMLA CLAIM

DISD also moves for summary judgment on Plaintiff's FMLA claim based on allegations that DISD denied her FMLA leave request made in September 2007, and Smith interrogated her about her FMLA leave, tried to rush reprimands through in order to terminate her before her FMLA leave was in place, and even stated that she would not have hired her had she known about her previous FMLA leaves. (Mot. Br. at 49; Compl. at 11-13.)

The FMLA provides two methods of recovery under its prescriptive and proscriptive provisions. *See* 29 U.S.C. §§ 2612(a)(1); 2614(a); 2615(a); *see also Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 763 (5th Cir.2001). "Prescriptively, an eligible employee is granted the right under certain circumstances to take up to twelve work-weeks of leave in a twelve-month period." *Morgan v. Neiman Marcus Grp. Inc.*, 2005 WL 3500314, at *3 (N.D. Tex. Dec. 20, 2005) (citing 29 U.S.C. §§ 2612(a)(1)).   Upon return from her FMLA leave, the employee is entitled to immediate restoration to the position she occupied prior to her leave, or its equivalent. *Id.* (citing *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir.2004)). Proscriptively, the FMLA prohibits discrimination and retaliation against an employee for her exercise of FMLA rights. *Id.* (citing 29 U.S.C. § 2615(a)).

## A.    Prescriptive FMLA Claim

DISD first moves for summary judgment on any prescriptive claim under the FMLA. To present a claim under the FMLA's prescriptive provision, "'a plaintiff must show that (1) she is an eligible employee under the FMLA, (2) the defendant is an employer subject to the requirements of

the FMLA, (3) she was entitled to FMLA leave, (4) she gave notice to the defendant of her intention to take FMLA leave, and (5) the defendant denied her the benefits to which she was entitled under the FMLA.'" *Porch v. Dillard's Inc.*, 2004 WL 1809813, at *6 (N.D. Tex. Aug.12, 2004) (quoting *Parker v. Hanhemann Univ. Hosp.*, 234 F.Supp.2d 478, 483 (D.N.J. 2002)). "The employee bears the burden of proving that he was entitled to FMLA leave and that the employer violated the statute by denying him such leave." *Henson v. Bell Helicopter Textron, Inc.*, 2004 WL 238063, at *10 (N.D. Tex. Feb. 6, 2004).

DISD argues that Plaintiff has no competent evidence that she was denied FMLA leave or that DISD denied her benefits to which she was entitled. (Mot. Br. at 48.) DISD specifically argues that Plaintiff did not initially provide the required documentation; by the time she did so, her FMLA leave request had become moot due to her placement on administrative leave. (Mot. Br. at 48-49, citing D. App. at 141-50.) DISD also argues that Plaintiff has not presented any evidence that she appealed the FMLA decision despite notification that she could do so. (*Id.*) Since Plaintiff bears the burden of proof at trial on her FMLA claim, DISD has met its summary judgment burden by pointing out an absence of evidence as to at least one element of Plaintiff's claim. The burden now shifts to Plaintiff to provide evidence sufficient to support a jury finding that she was denied FMLA leave to which she was entitled. Because Plaintiff does not provide such evidence, DISD is entitled to summary judgment on her prescriptive FMLA claim.

## B.     Proscriptive FMLA claims

DISD also moves for summary judgment on any retaliation claim under the FMLA. (Mot. Br. at 49.) The FMLA prohibits employers from interfering with, restraining, or denying the exercise or attempted exercise of, any right provided under the act. 29 U.S.C. § 2615(a)(1). The

FMLA also prohibits employers from discharging or in any other manner discriminating against an individual for opposing any practice made unlawful by the act. *Id.* § 2615(a)(2). An employee asserting a retaliation claim under the FMLA must first establish a *prima facie* case of retaliatory discharge by showing that (1) she engaged in a protected activity, (2) her employer discharged her, and (3) a causal link existed between the protected activity and the discharge. *Richardson v. Monitronics In'l, Inc.*, 434 F.3d 327, 332 (5th Cir.2005). Once a *prima facie* case is established, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If the employer proffers a legitimate, non-discriminatory reason, the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for retaliation or that the employer's reason though true is only one of the reasons for the employer's decision, another of which is retaliation. *See id.* at 332-35. If the employee submits sufficient evidence to create a fact issue that "retaliatory animus was a motivating decision" in her discharge, the employer must "provide sufficient evidence to establish as a matter of law that it would have fired her despite any retaliatory motive." *See id.* at 336. "The employer's final burden 'is effectively that of proving an affirmative defense.' " *Id.* (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir.2005)).

a. **Legitimate Non-Retaliatory Reason**

DISD does not dispute whether Plaintiff established a *prima facie* case of FMLA retaliation, and instead points to evidence showing that Plaintiff had disciplinary and performance-related problems prior to her request for FMLA leave. In doing so, it proffers a legitimate, non-retaliatory motive for Plaintiff's discharge. (Mot. Br. at 49). The burden now shifts to Plaintiff to provide evidence showing that the articulated reason is either a pretext for or was motivated by retaliation.

### b.        Pretext/ Motivating Factor

As evidence of pretext or retaliatory motive, Plaintiff points to the temporal proximity between her request for FMLA leave and Smith's recommendation for termination. (Resp. at 10-11.) While close timing between an employee's protected activity and an adverse action against her may provide the "causal connection" required to make out a prima facie case of retaliation, once the employer offers a legitimate non-discriminatory reason for her discharge, the employee must introduce some evidence from which a reasonable jury may infer that the action was merely a pretext for retaliation or that her protected activity was a motivating factor in her discharge. *See Hoogstra v. W. Asset Mgmt.*, 560 F.Supp.2d 515, 523-25 (E.D. Tex. 2006). Plaintiff provides no such evidence, arguing instead that Smith accelerated her reprimands to block her FMLA leave. (Resp. at 10-11.) Plaintiff's subjective belief, however, is not enough to show pretext or retaliatory motive. *See Jarjoura v. Ericsson, Inc.*, 266 F. Supp.2d 519, 532 (N.D. Tex 2003). Plaintiff's unsworn allegation in her complaint that Smith stated that she would not have hired Plaintiff had she known that Plaintiff had been on FMLA leave previously also does not constitute competent summary judgment evidence. (*Id.* at 14.) Since Plaintiff has failed to provide evidence of pretext or mixed motive, the Court should grant summary judgment on her FMLA retaliation claim and dismiss it with prejudice.

### c.        Wholly Motivated by Legitimate Non-Retaliatory Reasons

Assuming that Plaintiff has raised a genuine material fact issue that her FMLA request was a motive in her termination decision, DISD has met its final burden of effectively proving its affirmative defense that Smith's recommendation was motivated wholly by legitimate, non-discriminatory reasons and was unrelated to Plaintiff's request for FMLA leave. *See Richardson.*,

434 F.3d at 336 (quoting *Machinchick*, 398 F.3d at 355). Summary judgment should therefore be granted in favor of DISD with respect to Plaintiff's FMLA retaliation claim.

## XV.  EQUAL PAY ACT CLAIM

DISD also moves for summary judgment on Plaintiff's Equal Pay Act claim. (Mot. Br. at 49-50). To establish a *prima facie* case under the Equal Pay Act, a plaintiff must show that (1) her employer is subject to the act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison. *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 722-23 (5th Cir. 1986)). DISD argues that Plaintiff has not alleged that "she was paid less than any other employee much less an employee of the opposite sex." (Mot. Br. at 50.) Plaintiff does not respond to this specific argument or provide any evidence to oppose it. The Court should therefore grant summary judgment on Plaintiff Equal Pay Act claim and dismiss it with prejudice.

## XVI.  HIPAA CLAIM

Even though DISD does not move to dismiss Plaintiff's HIPAA claim, the Court may dismiss it *sua sponte* for lack of subject matter jurisdiction. *See Preston v. Tenet Healthsystem Mem'l Hosp.*, 485 F.3d 804, 812 (5th Cir. 2007) ("As a bedrock principle of federal jurisdiction, a court may *sua sponte* review whether subject matter jurisdiction exists in a case"). While HIPAA generally requires confidentiality of medical records, and provides both civil and criminal penalties for improper disclosures of medical information, Congress has limited its enforcement to the Secretary of Health and Human Services. *See Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir.2006). There is no express or implied private cause of action under HIPAA, and therefore no federal subject

matter jurisdiction over any HIPAA claims.  *See id.*  Plaintiff's HIPAA claim should therefore be dismissed for lack of subject matter jurisdiction.

## XVII.   CONCLUSION

*Defendant's Motion for Summary Judgment* should be **GRANTED** with respect to all of Plaintiff's claims.

**SO RECOMMENDED** on this 20th day of September, 2010.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE